FILED
AUG - 2 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Manuel M. Ellenbogen
546 White Oak Road
Blue Bell, PA 19422
ellenbmp@comcast.net
215-646-4517

      Complainant,

         v.

The Canadian Embassy
501 Pennsylvania Avenue N.W.
Washington, D.C. 20001

CASE NUMBER   1:05CV01553

JUDGE: John D. Bates

DECK TYPE: Employment Discrimination

DATE STAMP: 08/02/2005

*JURY ACTION*

## COMPLAINT

COMES NOW the Complainant, MANUEL M. ELLENBOGEN, *pro se*, and moves this Honorable Court for judgment on the grounds and in the amounts as follows:

1. This is an action for discrimination on the basis of age leading to the abolishment of Complainant's position on August 29, 2003.

## JURISDICTION AND VENUE

2. The jurisdiction and venue of this court are invoked pursuant to the Age Discrimination in Employment Act and the pendent jurisdiction of this court. Venue is proper in this court because the employment discrimination took place in this district and pursuant to 28 U.S.C. 1391(b).

1

## PARTIES

3. Complainant, Manuel M. Ellenbogen, a United States citizen, is an adult male residing in Montgomery County, Pennsylvania, and was an employee of the Defendant.

4. Defendant, the Canadian Embassy, the legal representative of the government of Canada and has at all times relevant to this action employed 20 or more employees for every working day in each of 20 or more calendar weeks in the current preceding calendar year.

## STATEMENT OF FACTS

5. Manuel M. Ellenbogen, the Complainant, began working for the Canadian Embassy in July of 1987. Complainant was hired as a Commercial Officer for the Canadian Consulate General in Philadelphia, Pennsylvania on January 28, 1986 and following the closure of the Consulate, was the only member of a 24 person staff to be transferred to the Canadian Embassy in Washington D.C. in order to continue and expand trade development activities in the Mid-Atlantic region. In 1998, Complainant's position was reclassified to become Business Development Officer in the same section.

6. During the Complainant's tenure at the Canadian Embassy his duties included: developing export markets and promoting Canadian Biotechnology, Medical,

2

Pharmaceutical, Telecommunications, Construction and Building Materials, Industrial and Agricultural commodities as well as related equipment and services in the Mid-Atlantic Region by directly supporting the export marketing efforts of Canadian businesses, federal and provincial governments and trade associations, implementing and evaluating promotional programs to develop export opportunities for Canadian suppliers of goods and services and working to increase overall market share for the aforementioned Canadian industries.

7. Complainant was uniquely qualified to serve as both a Commercial Officer and Business Development Officer.  Complainant holds both a B.S. in Business Administration and an M.S. in Political Science from Villanova University. Complainant is fluent in five languages including French.  English and French are the official languages of Canada.  For 18 years prior to joining the Canadian government, Complainant worked in the export markets for a number of American companies, representing their interests in Latin America, Europe, Asia and Africa.  Complainant traveled extensively internationally to maintain, promote and expand their markets.

8. During Complainant's tenure with the Canadian Embassy, he received regular and periodic salary increases.  Complainant's starting salary with the Canadian government was in the neighborhood of US$28,000 and ending salary was approximately US$78,000.

3

9. Complainant began work with the Canadian Government at the American equivalent of GS-12 Level 1 and during his employment was promoted to GS-12 Level 10. Upon conversion from the American GS scale to the Canadian LE scale, Complainant was assigned to the LE-9, top of the scale.

10. Complainant received periodic work performance evaluations. <u>All</u> work evaluations were more than satisfactory.

11. Throughout his tenure, Complainant received multiple letters of appreciation for his services from both Canadian and American clients. Complainant was singled out in the Canadian Import/Export publication for a successful business relationship between a Canadian manufacturer and an American client.

12. From approximately September 2002 to August 2003 Complainant was unjustifiably stripped of his job responsibilities and these responsibilities were reassigned to substantially younger Business Development Officers with significantly less work experience and qualifications. Defendant offered <u>no</u> explanation for this extensive shift.

13. Complainant repeatedly attempted to redress the situation. Complaint first tried to fix the situation by speaking with his immediate supervisor, Mr. Leslie Reissner. Discussions with Mr. Reissner failed to yield any result. Complainant then brought the issue to the attention of Ms. Lynda Watson, Minister Counselor

4

Commercial, on numerous occasions. In each instance, Complainant was listened to and promised that the situation would be remedied.

14. Despite promises that were made to Complainant, the situation continued to deteriorate. On May 20, 2003 in an internal memo issued by Mr. Reissner and relating to a major event in the Biosciences Sector, Complainant was assigned a minor role in BIO2003 as opposed to the major role that Complainant would normally have had. Other members of the Trade Development sector received more substantial roles. One of Complainant's most important sectors was the biotechnology sector.

15. On May 30, 2003, Complainant wrote a memo to Ms. Watson requesting a meeting and stating "I could not fail but notice that activities falling into my current portfolio are being assigned elsewhere as part of the continuing effort to dilute and usurp my job responsibilities."

16. On June 2, 2003 the requested meeting took place. At the meeting, Complainant raised the issue as to why his duties were being taken away from him and systematically assigned to others in the group. Specifically, Complainant addressed the aforementioned situation concerning BIO2003. Complainant was told that regarding BIO2003, his duties were reassigned because he was scheduled to take a vacation from April 30, 2003 to May 16, 2003. Complainant responded that the vacation had been approved by his immediate supervisor, Mr. Reissner

and that Mr. Stephanne Charboneau, one of the more junior members of the Trade Development sector to receive a more substantial role in BIO2003, was scheduled to take a vacation from June 5, 2003 to June 16, 2003. In addition, Ms. Julie Gagon, another more junior member to receive a more substantial role in BIO2003 was scheduled to take a vacation from June 5, 2003 to June 16, 2003. BIO2003 was scheduled to be held in Washington D.C. from June 21 to June 25, 2003.

17. At the June 2, 2003 meeting, Complainant also raised the issue surrounding the FDA export training mission in Montreal. In the past, Complainant had organized many such FDA training missions across Canada and served as an integral part at each and every mission. As in past occasions, Complainant had worked to organize an FDA export training mission in Montreal from June 16-18, 2003. At the last minute, Complainant was informed by Mr. Reissner that he was to break with prior tradition and not attend the FDA training mission as previously planned. Again, no explanation was offered.

18. The secondary purpose behind Complainant attending the FDA export training mission in Montreal was to meet with medical equipment manufacturers in the region in anticipation of the October 2, 2003 incoming mission in Baltimore.

19. Complainant consistently questioned, at the June 2, 2003 meeting and on prior occasions, why his duties were being taken away from him. No explanation was

6

ever offered. In addition, it should be noted that the plane tickets for Complainant's trip to Montreal had already been purchased and went unused as a result.

20. Furthermore during the June 2. 2003 meeting, Complainant further pressed the fact that his job duties were systematically being taken away from him and being assigned to junior officers with less experience without any explanation. Complainant questions were met with vague and unsubstantial responses. Again, no explanation was offered.

21. On August 27, 2003 Defendant informed Complainant in writing that his services would no longer be required.

22. Complainant was informed that it was necessary to "reduce the International Business Development Program of the Canadian Embassy in Washington." Defendant cited this as their reason even though at the time that the letter was written there was an on-going search for an Information Technology Officer. Complainant had duties which overlapped with this open position. Complainant repeatedly requested that he be allowed to continue serving the Canadian government by taking on this position or that the open position be eliminated instead. Complainant was provided with no reason as to why the position could not be assigned to him or eliminated instead of Complainant's position.

23. Defendant discriminated against the Complainant, a mature professional, because he was over age 40 (a protected age group) when they terminated his position effective August 29, 2003.

24. Complainant attempted to resolve this matter by filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). Defendant refused to cooperate claiming that it enjoyed sovereign immunity pursuant to the Foreign Sovereign Immunity Act ("FSIA").

25. Both the EEOC and the Department of State refuted Defendant's claim. This case falls under an exception to the FSIA. "In any case…in which the action is based upon a commercial activity carried on in the United States by a foreign State." The writing further states that if an individual is employed as a diplomatic or civil service employee then the employee is automatically considered to be engaging in governmental and not commercial activity and thus sovereign immunity can be properly asserted. However, in the instant case, Complainant was engaged in commercial activity (i.e. promoting goods and services to the United States via trade shows and locating distributors etc.) *See Holden v. Canadian Consulate* Case No. 94-17130 BNA 929.

26. The Vienna Convention does not provide Defendant with immunity either. The Vienna Convention only provides immunity to diplomatic agents and their families, but not to foreign states. *See Al Mukaddam* 111 F. Supp. At 468.

27. Complainant lost substantial employment benefits and suffered other incidental and consequential damages and expenses. The damages include lost wages, salary, benefits and certain other incidental and consequential expenses and losses and increased medical expenses.

28. The acts taken toward the Complainant were carried out by managerial employees acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Complainant, Complainant requests that the assessment of damages against Defendant be in an amount appropriate to punish and make an example of Defendant.

29. WHEREFORE, the Complainant prays for judgment in the amount of $350,000.00 compensatory damages.

## JURY DEMAND

30. Complainant requests trial by jury on all issues.

Respectfully submitted,

Manuel M. Ellenbogen, *Pro Se*
546 White Oak Road
Blue Bell, PA 19422
ellenbmp@comcast.net
215-646-4517