# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MANUEL M. ELLENBOGEN,    )
        )
        Plaintiff,    )
        )
v.        )    No. 1:05CV01553 (JDB)
        )
CANADA,    )
        )
        Defendant.    )
_____)

## DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Canada hereby submits its Objections and Responses to Plaintiff's First Set of Interrogatories.

## I.    GENERAL OBJECTIONS

1.    Canada objects to Plaintiff's Interrogatories to the extent that they seek information or documents that are protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

2.    Canada objects to Plaintiff's Interrogatories to the extent that they seek information or documents that contain confidential trade secrets or other confidential or proprietary information of Canada.  However, Canada is willing to produce such information and documents pursuant to an appropriate Confidentiality Order.

3.    Canada objects to Plaintiff's Interrogatories to the extent that they purport to impose requirements different from or in addition to the Federal Rules of Civil Procedure.  In responding to each request, Canada will provide only such information and/or documents as are necessary and proper under those rules.

4.     Canada objects to Plaintiff's Interrogatories to the extent that they do not identify the time period for which documents are sought and that they seek documents regarding events prior to applicable statute of limitations period.

5.     The answers set forth herein reflect Canada's best knowledge based upon its review and investigation of the facts available to date.  Canada reserves the right to amend and supplement these responses, including the assertion of additional objections.

6.     Canada's agreement to provide information or to search for and/or produce documents responsive to any Interrogatory should not be deemed to be an admission or agreement that such information and/or documents are relevant, admissible at trial or in any way pertinent to the issues in this action.

## II.     SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

What was Manuel Ellenbogen's starting pay received and reported for 1986 from the Canadian government?

### RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff's starting pay twenty years ago is wholly irrelevant to any damages that he is now seeking.

### INTERROGATORY NO. 2:

Were there any monies paid to Manuel Ellenbogen that went unreported in 1986 and thereafter to the end of his employment?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Canada further objects to this Interrogatory on the ground that the term "unreported" is vague and ambiguous. Pay for services performed as an employee of a foreign government is not considered to be wages for the purposes of withholding U.S. federal income taxes. United States citizens who receive pay for services as an employee of a foreign government must, however, include their pay in their gross income, report it as self-employment income on their U.S. federal income tax returns, and pay self-employment taxes to the extent that services are performed in the United States. These employees are not considered self-employment for any other federal tax purposes. See IRS Publications, Persons Employed by a Foreign Government or International Organization and How to Report Wage Income Paid by Foreign Governments or International Organizations for Work Performed in the United States, which are available at http://www.irs.gov/business/small/international

**INTERROGATORY NO. 3:**

If the answer is yes, how much and why was it not reported?

**RESPONSE:**

Canada incorporates by reference its response to Interrogatory No. 2.

**INTERROGATORY NO. 4:**

What was Manuel Ellenbogen's ending pay in 2002 and 2003?

**RESPONSE:**

Subject to and without waiving its General Objections, Canada states that Plaintiff earned gross wages of $82,933.94 in 2002 and gross wages of $67,624.25 in 2003.

**INTERROGATORY NO. 5:**

Were there any monies paid to Manuel Ellenbogen that went unreported in 2002 and 2003?

**RESPONSE:**

Canada incorporates by reference its response to Interrogatory No. 2.

**INTERROGATORY NO. 6:**

Did Manuel Ellenbogen perform satisfactorily in his job as a Commercial/Business Development Officer?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that on the ground that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's job performance was not considered in the Reverse Order of Merit process that led to Plaintiff's termination. Canada further objects to this Interrogatory on the ground that it does not identify the time period to which it refers and the term "satisfactorily" is vague, ambiguous, and undefined. Subject to and without waiving its Objections, Canada states that it regarded Plaintiff's performance as a Business Development Officer as satisfactory.

**INTERROGATORY NO. 7:**

How many job evaluations did Manuel Ellenbogen receive while he was employed by the Canadian government?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Performance evaluations were not reviewed or considered as part of the Reverse Order of Merit process that led to Plaintiff's termination. Subject to and without waiving its Objections, Canada states that any formal performance reviews that Plaintiff received during his employment are contained in his personnel file, which Canada is producing in response to Request No. 13 of Plaintiff's Request for the Production of Documents.

**INTERROGATORY NO. 8:**

Did Manuel Ellenbogen ever receive a less than favorable job evaluation?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Performance evaluations were not reviewed or considered as part of the Reverse Order of Merit process that led to Plaintiff's termination. Canada further objects to this Interrogatory on the ground that "less than favorable" is vague and ambiguous. Subject to and without waiving its Objections, Canada incorporates by reference the documents produced in response to Request No. 13 of Plaintiff's Request for the Production of Documents and states that the

answer to this Interrogatory may be derived or ascertained from Plaintiff's formal performance reviews contained in his personnel file.

**INTERROGATORY NO. 9:**

If the answer to the above question is yes, please identify and provide the details and the date of such evaluation.

**RESPONSE:**

Canada incorporates by reference its response to Interrogatory No. 8.

**INTERROGATORY NO. 10:**

Were all of the job evaluations that Manuel Ellenbogen received during his employment satisfactory or more than satisfactory?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Performance evaluations were not reviewed or considered as part of the Reverse Order of Merit process that led to Plaintiff's termination. Canada further objects to this Interrogatory on the ground that the phrase "more than satisfactory" is vague and ambiguous. Subject to and without waiving its Objections, Canada incorporates by reference the documents produced in response to Request No. 13 of Plaintiff's Request for the Production of Documents and states that the answer to this Interrogatory may be derived or ascertained from Plaintiff's formal performance reviews contained in his personnel file.

**INTERROGATORY NO. 11:**

Please identify and provide the details and the date of all such evaluations referenced above.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Performance evaluations were not reviewed or considered as part of the Reverse Order of Merit process that led to Plaintiff's termination. Subject to and without waiving its Objections, Canada incorporates by reference the documents produced in response to Request No. 13 of Plaintiff's Request for the Production of Documents and states that the answer to this Interrogatory may be derived or ascertained from Plaintiff's formal performance reviews contained in his personnel file.

**INTERROGATORY NO. 12:**

Were Manuel Ellenbogen's duties during the September 2002 to August 2003 period the same as they had been before the start of that period?

**RESPONSE:**

Subject to and without waiving its General Objections, Canada states that Plaintiff's job duties were generally the same during the September 2002 to August 2003 period as they had been before the start of that period.

**INTERROGATORY NO. 13:**

Identify the person at the Canadian Embassy who would have to approve a decrease in responsibilities of a Business Development Officer?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it does not identify the time period to which it refers. Subject to and without waiving its Objections, Canada states Lynda Watson could approve a change in emphasis of responsibilities or a shift in assignments but that a decrease in responsibilities may need to be reviewed for a possible downward reclassification of the position, which requires approval of the classification committee and may involve Headquarters.

## INTERROGATORY NO. 14:

Did such approval take place in Manuel Ellenbogen's case?

## RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it does not identify the time period to which it refers. Subject to and without waiving its Objections, Canada states that Plaintiff's job duties were not decreased during the relevant time period.

## INTERROGATORY NO. 15:

In 2000, was one of Manuel Ellenbogen's sectors building materials?

## RESPONSE:

Subject to and without waiving its General Objections, Canada states that the construction and building sector was assigned to Plaintiff in 2000.

## INTERROGATORY NO. 16:

By the end of 2002, was building materials still one of Manuel Ellenbogen's sectors?

## RESPONSE:

Subject to and without waiving its General Objections, Canada states that the construction and building sector was not assigned to Plaintiff at the end of 2002.

**INTERROGATORY NO. 17:**

Why was building materials taken away from Manuel Ellenbogen as one of his trade sectors?

**RESPONSE:**

Subject to and without waiving its General Objections, Canada states that its priority and non-priority sectors change from time to time and, therefore, sector assignments among the Business Development Officers change from time to time. In late 2000 and early 2001, Canada evaluated its assignments of sectors to Business Development Officers at its Embassy in Washington, D.C through a consultative process with all of the locally-engaged Business Development Officers and corresponding Canada-based staff. Five priority sectors were identified and each of the three locally-engaged Business Development Officers, their managers, and corresponding two Canada-based staff was assigned one priority sector. The non-priority sectors were divided up among the locally-engaged Business Development Officers and corresponding Canada-based staff. At that time, the construction and building sector was elevated to a priority sector. Because Plaintiff's assigned priority sector was biotechnology and health/medical devices, he was not assigned to the construction and building sector.

**INTERROGATORY NO. 18:**

Who was the building materials sector assigned to in 2002 or 2003?

**RESPONSE:**

Subject to and without waiving its General Objections, Canada states that the construction and building sector was assigned to Sandra Shaddick in late 2002 and 2003.

**INTERROGATORY NO. 19:**

When Ms. Sandra Shaddick was assigned responsibility over the building materials sector, how many years had she been with the Canadian Embassy? What was her employment grade?

**RESPONSE:**

Subject to and without waiving its General Objections, Canada states that the construction and building sector was assigned to Ms. Shaddick upon her arrival at the Canadian Embassy in Washington, D.C. in September 2002 as Canada-based staff at the FS-01 level.

**INTERROGATORY NO. 20:**

What is the year of Ms. Sandra Shaddick's birth?

**RESPONSE:**

Subject to and without waiving its General Objections, Ms. Shaddick was born in 1978.

**INTERROGATORY NO. 21:**

How many languages did Ms. Sandra Shaddick speak?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Ms. Shaddick did not participate in the Reverse Order of Merit process that led to Plaintiff's termination.

**INTERROGATORY NO. 22:**

What was the highest level of education that Ms. Sandra Shaddick received?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Ms. Shaddick did not participate in the Reverse Order of Merit process that led to Plaintiff's termination.

## INTERROGATORY NO. 23:

Was one of Manuel Ellenbogen's most important trade sectors biotechnology?

## RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it does not identify the time period to which it refers. Subject to and without waiving its Objections, Canada states that Plaintiff's priority sector in 2003 was biotechnology and health/medical devices.

## INTERROGATORY NO. 24:

Explain why Manuel Ellenbogen was assigned to a more minor role in BIO2003 as opposed to the more important role that he normally had in planning such events.

## RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that the phrase "important role" and term "events" are vague, ambiguous and undefined. Subject to and without waiving its Objection, Canada disputes Plaintiff's characterization of his role in BIO2003 as "more minor" and his role in other events as normally "more important." Canada states that Plaintiff played a greater role in BIO2003 than he had in prior annual BIO conferences because the Canadian Embassy in Washington, D.C. hosted the entire Canadian involvement in BIO2003 but not the prior annual BIO conferences.

## INTERROGATORY NO. 25:

Who made the decision to assign Manuel Ellenbogen to a more minor role in BIO2003?

**RESPONSE:**

Canada incorporates by reference its response to Interrogatory No. 24.

**INTERROGATORY NO. 26:**

What was the protocol for making such a decision?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that the term "decision" is vague and ambiguous.

**INTERROGATORY NO. 27:**

In 2003, what was Mr. Stephanne Charboneau job title?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 28:**

What were the duties associated with his position? What sectors did he routinely cover?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that Stephane Charbonneau was not similarly situated to Plaintiff or subject to the Reverse Order of Merit process that led to Plaintiff's termination.

**INTERROGATORY NO. 29:**

What year was Mr. Stephanne Charboneau born?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that Stephane Charbonneau was not similarly situated to Plaintiff or subject to the Reverse Order of Merit process that led to Plaintiff's termination.

**INTERROGATORY NO. 30:**

Prior to 2003, for how many years did Mr. Stephanne Charboneau work at the Canadian Embassy?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that Stephane Charbonneau was not similarly situated to Plaintiff or subject to the Reverse Order of Merit process that led to Plaintiff's termination.

**INTERROGATORY NO. 31:**

What role did Mr. Stephanne Charboneau play in BIO2003?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 32:**

Why did he receive a more substantial role in BIO2003 than Manuel Ellenbogen?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 33:**

Did Mr. Stephanne Charboneau take a vacation in June of 2003?  What are the exact dates?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.  Canada further objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 34:**

In 2003, what was Ms. Julie Wallace's job title?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 35:**

What were the duties associated with her position?  What sectors did she routinely cover?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 36:**

Did she participate in BIO2003?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 37:**

What was her role in BIO2003?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 38:**

As a locally engaged business development officer what was her classification?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 39:**

From 1999 to 2002 what was Manuel Ellenbogen's role in FDA training missions to Canada?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 40:**

Was Manuel Ellenbogen's role in FDA training missions to Canada different in 2003 than in previous years?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 41:**

Why did Manuel Ellenbogen receive a different role in FDA training missions than in previous years?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 42:**

Why was Manuel Ellenbogen stopped from traveling to Montreal as part of the FDA training mission in June 2003?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 43:**

Please identify all of the people that played a role in making the decision that Manuel Ellenbogen was not to attend the June 2003 FDA export training mission in Montreal.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further

objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 44:**

Why was this decision made?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 45:**

Was this decision made in connection with any internal policies?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 46:**

Were air travel tickets already purchased for Manuel Ellenbogen to travel to Montreal for the FDA export training mission when the decision was made that he would not be permitted to attend?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further

objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 47:**

What happened to the airline tickets?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 48:**

Identify who attended the June 2003 FDA training mission?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 49:**

Was one of the goals of the June 2003 FDA training mission to recruit participants for the October 2, 2003 NEXUS export training mission in Baltimore?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further

objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 50:

Was the scheduled October 2, 2003 NEXUS export training mission in Baltimore successful? Did it take place?

## RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 51:

How many companies from Canada attended the October 2, 2003 NEXUS export mission in Baltimore?

## RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 52:

How were Canadian participants supposed to be found for the October 2, 2003 NEXU export mission in Baltimore?

## RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 53:**

Beginning in 2000 Baltimore organized an event called "Embassy Days" Manuel Ellenbogen with or without his immediate supervisor participated in all events. In 2003, participation in the event was assigned to a different Business Development Officer. Why was the assignment taken away from Manuel Ellenbogen?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 54:**

Identify who made the decision to keep Manuel Ellenbogen from participation in "Embassy Days?"

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 55:**

What was the basis for assigning "Embassy Days" to another officer?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 56:**

You admit that Manuel Ellenbogen wrote a memo to Lynda Watson on May 30, 2003 stating that "I could not fail but notice that activities falling into my current portfolio are being assigned elsewhere as part of the continuing effort to dilute and usurp my job responsibilities," identify what actions, if any, were taken in response to this memorandum?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's sole claim is for age discrimination under the Age Discrimination in Employment Act. Plaintiff's Complaint does not allege a retaliation claim.

**INTERROGATORY NO. 57:**

Were any internal meetings held to discuss the accusations raised in Manuel Ellenbogen's May 30, 2003 memo? If no, why not?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's sole claim is for age discrimination under the Age Discrimination in Employment Act. Plaintiff's Complaint does not allege a retaliation claim.

**INTERROGATORY NO. 58:**

Identify the Canadian Embassy's internal policy to responding to memos from employees charging unfair treating and/or discrimination?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's sole claim is for age discrimination under the Age Discrimination in Employment Act. Plaintiff's Complaint does not allege a retaliation claim.

**INTERROGATORY NO. 59:**

Was the policy followed in response to Manuel Ellenbogen's memo? If not, please explain why not.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's sole claim is for age discrimination under the Age Discrimination in Employment Act. Plaintiff's Complaint does not allege a retaliation claim.

**INTERROGATORY NO. 60:**

Identify all parties present at the June 2, 2003 meeting with Manuel Ellenbogen.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.  Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff's sole claim is for age discrimination under the Age Discrimination in Employment Act. Plaintiff's Complaint does not allege a retaliation claim.

**INTERROGATORY NO. 61:**

Were any meetings held prior to the June 2, 2003 meeting to discuss what answers would be given to Manuel Ellenbogen or what positions would be taken at the June 2, 2003 meeting?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.  Canada further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff's sole claim is for age discrimination under the Age Discrimination in Employment Act. Plaintiff's Complaint does not allege a retaliation claim.

**INTERROGATORY NO. 62:**

During August 2003 was the Canadian Embassy looking for an Information Technology Officer?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 63:**

Was a vacancy created by the departure of Gerard Brathwaite Sturgeon, an Information Technology Officer?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 64:**

Why was Manuel Ellenbogen not transferred to this open position when his position was eliminated?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 65:**

Why was there a need for a new Information Technology Officer at the same time it was "necessary" to eliminate a Business Development Officer?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 66:**

Identify who authorized the search for an Information Technology Officer?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 67:**

Please describe the internal policy procedures which led to a finding that it was necessary to add an Information Technology Officer.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 68:**

Identify and list the qualifications of all candidates that were considered for this position.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 69:**

Please list the duties of an Information Technology Officer.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 70:**

Did Manuel Ellenbogen ever fulfill some of the duties of an Information Technology Officer during his time as a Business Development Officer?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 71:**

Were there any educational or language requirements to become an Information Technology Officer?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 72:**

Please identify the person who was selected to be the Information Technology Officer.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 73:**

Why did Manuel Ellenbogen not receive an interview for the job of Information Technology Officer?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 74:**

Please identify each individual that was involved in filling the Information Technology Officer position.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 75:**

Does the Canadian Embassy have an official policy on terminating an existing position?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 76:**

Please describe in detail, step by step, the Canadian Embassy's policy on terminating an existing position.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 77:**

Who initiated the termination of Manuel Ellenbogen's position with the Canadian Embassy?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 78:**

Was Manuel Ellenbogen forced to participate in a Reverse Order of Merit Evaluation in 2003 to determine which Business Development Officer that was an LE-9 would be eliminated?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 79:**

If Manuel Ellenbogen refused to participate in a Reverse Order of Merit Evaluation in 2003 to determine which Business Development Officer that was an LE-9 would be eliminated, would Manuel Ellenbogen have been dismissed?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 80:**

Why was the LE-9 grade level selected as opposed to any other grade level to participate in the Reverse Order of Merit Evaluation?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 81:**

Was this Reverse Order of Merit Evaluation part of the Canadian Embassy's written policy?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 82:**

Please identify each of the participants in the Reverse Order of Merit Evaluation.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 83:**

Identify who determined who "succeeded or failed" or what score each participant received in the Reverse Order of Merit Evaluation? Identify each of the panel members.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 84:**

Following the Reverse Order of Merit Evaluation in 2003, were any grades or scores released to participants? Were they made available upon request?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 85:**

Identify and describe the Canadian Embassy's internal policy of grading the Reverse Order of Merit Evaluation in 2003.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 86:**

What qualities were judged to be most important? Least important? Why?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 87:**

What was the relevance of Manuel Ellenbogen and the other participants in the Reverse Order of Merit Evaluation being asked when they graduated college?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 88:**

Where did any other Reverse Order of Merit Evaluations take place? Where? What was the grade level of the employees involved in the Reverse Order of Merit Evaluations?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 89:**

Was there ever a Reverse Order of Merit Evaluation held to determine whether a Business Development Officer would stay or go before the evaluation that Manuel Ellenbogen participated in? If yes, please provide the details and identify participants.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

### INTERROGATORY NO. 90:

Has there been another Reverse Order of Merit Evaluation held to determine whether a Business Development Officer would stay or go after the evaluation that Manuel Ellenbogen participated in? If yes, please provide the details and identify participants.

### RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

### INTERROGATORY NO. 91:

Both before and after, Manuel Ellenbogen's Reverse Order of Merit Evaluation, what was the highest level or rank of employees that participated in an evaluation?

### RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

### INTERROGATORY NO. 92:

When did the action commence to terminate a Business Development Officer position?

### RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that "the action" is vague and ambiguous. Plaintiff has not specified whether he is referring to the Reverse Order of Merit process that led to his termination or some other Reverse Order of Merit process.

**INTERROGATORY NO. 93:**

Please provide in detail the chronology of the events surrounding the termination of Manuel Ellenbogen's position.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 94:**

Were meetings held to discuss the termination of Manuel Ellenbogen's position?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 95:**

Identify all of those present at the meetings.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order.

**INTERROGATORY NO. 96:**

Does the Canadian Government have a written or unwritten policy on early retirement? If yes, please describe.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it is overly broad and seeks information

that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 97:

What sectors was Michael Pascal at the Canadian Consulate in Los Angeles responsible for?

## RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 98:

What year was Michael Pascal born?

## RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 99:

Were these sectors later assigned to someone else at the Consulate in Los Angeles?

## RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 100:**

Why was the decision made to assign these sectors to someone else?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 101:**

Was Michael Pascal asked to retire because his sectors were no longer sectors of interest? If not, what was the reason that Michael Pascal was asked to retire?

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 102:**

Please identify all employees of the Business Development Section in 2003.

**RESPONSE:**

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground that it is not limited to the Washington, D.C. embassy or to the section or unit in which Plaintiff was employed.

## INTERROGATORY NO. 103:

How many people were employed at the Canadian Embassy in 2003?

## RESPONSE:

In addition to its General Objections, Canada objects to this Interrogatory on the ground that it exceeds the limitations imposed by the Court's Scheduling Order. Canada further objects to this Interrogatory on the ground it is it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

I, Lynda Watson, do hereby state under penalty of perjury that the foregoing Objections and Responses to Plaintiff's First Set of Interrogatories are, to the best of my knowledge, information and belief, true and correct.

Lynda Watson                    11 Dec 06
                                Date

Signed as to objections:

Robert G. Ames, D.C. Bar No. 234393
Lesley A. Pate, D.C. Bar No. 485139

Venable LLP
575 7th Street, N.W.,
Washington, D.C. 20004
(202) 344-40000
(202) 344-8300 (facsimile)

Counsel for Canada

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of December, 2006, I caused a copy of the foregoing Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories to be served electronically and via overnight delivery on:

Manuel M. Ellenbogen
546 White Oak Road
Blue Bell, PA 19422

_Lesley A. Pate_
Lesley A. Pate